The RANDALL COUNTY COMMISSION-
ERS COURT and C.W. "Mac" McMena-
my, Randall County Judge and Individ-
ually, and John M. Dodson, Randall
County Commissioner and Individual-
ly, and Bill Thomas, Randall County
Commissioner and Individually, and
John Currie, Randall County Commis-
sioner and Individually, and George
"Skip" Huskey, Randall County Com-
missioner and Individually, and Geneva
Bagwell, Randall County Treasurer,
and Lyndell Moore, Randall County
Auditor, Appellants,

v.

Randall L. SHERROD, Randall County
Criminal District Attorney, and
Michael B. Kral, Appellees.

No. 07–92–0007–CV.

Court of Appeals of Texas,
Amarillo.

Feb. 10, 1993.

Rehearing Denied May 28, 1993.

Ford & Ferraro, Daniel H. Byrne, Bruce Perkins, Austin, for appellants.

Randall Criminal Dist. Attorney's Office, Randall L. Sherrod, Kay Davis, William E. Kelly, III, Canyon, for appellees.

Before DODSON, BOYD and POFF, JJ.

PER CURIAM.

John M. Dodson, Bill Thomas, John Currie and George "Skip" Huskey, the Randall County Commissioners Court (the Commissioners Court), C.W. "Mac" McMenamy, the Randall County Judge, Geneva Bagwell, the County Treasurer, and Lyndell Moore, the County Auditor, appellants, appeal from a temporary injunction rendered by the trial court in favor of Randall L. Sherrod, the Randall County Criminal District Attorney and Michael B. Kral, appellees, in the cause of action against appel-

lants for a permanent injunction and mandamus relief.

Appellants bring two points of error by which they challenge the temporary injunction. By the first point, appellants claim the trial court abused its discretion by granting the temporary injunction, because the injunction altered the status quo. By the second point of error, appellants maintain that the trial court abused its discretion by issuing the temporary injunction, because appellees failed to establish a probable right of recovery on final hearing.

All three members have written separate opinions. Justice Poff would overrule the first point of error, sustain the second point of error as to the Commissioners Court's failure to fund a third investigator position for the District Attorney's office, and would overrule the second point as to the District Attorney's salary supplement. Justice Dodson would sustain the second point of error and conclude that a determination of the first point of error is unnecessary to the disposition of the appeal. Justice Boyd would overrule the first point of error and would sustain the second point of error.

Consequently, a majority of the panel overrules the first point of error and sustains the second point of error. Accordingly, the judgment of the trial court is reversed, the temporary injunction is dissolved, and the cause is remanded to the trial court for proceedings consistent with the majority determination of the second point of error. The opinion of each Justice explicating his determination of each point of error appears in the following order: Justice Poff, Justice Dodson, and Justice Boyd.

POFF, Justice, concurring and dissenting.

In August 1991, the Randall County Commissioners Court (the Commissioners Court) approved the Randall County Budget for the 1991–92 fiscal year.[1] Dissatisfied with the new budget, Randall County Criminal District Attorney Randall Sherrod (Sherrod) filed suit to prevent the implementation of the 1991–92 budget as it applied to his office (the D.A.'s office). Mike Kral (Kral), an investigator in the D.A.'s office intervened in the suit. Both Sherrod and Kral sought a temporary injunction requiring the Commissioners Court to continue funding the D.A.'s office at the levels in place for the 1990–91 fiscal year.[2] The trial court granted the requested temporary injunction on the ground that upon final trial it would probably be shown that the Commissioners Court abused its discretion in formulating and enacting the 1991–92 budget for the D.A.'s office by acting in an arbitrary and capricious manner. The Commissioners Court and the other above-specified appellants (collectively, appellants) have appealed the granting of the temporary injunction to this Court.

As this Court recently noted in *Goldome Credit Corp. v. University Square Apartments*, 828 S.W.2d 505, 509 (Tex.App.—Amarillo 1992, no writ), five requirements must be met before temporary injunctive relief can be granted. First, a temporary injunction can only be granted to preserve the status quo. *Surko Enters. v. Borg–Warner Acceptance Corporation*, 782 S.W.2d 223, 224 (Tex.App.—Houston [1st Dist.] 1989, no writ). Second, the plaintiff must demonstrate the threat of imminent harm if not for the injunction. *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877, 881 (Tex.App.—Fort Worth 1982), *aff'd*, 647 S.W.2d 246 (Tex.1983); *Thomas v. Hale County*, 531 S.W.2d 213, 214 (Tex.Civ.App.—Amarillo 1975, no writ). Third, the plaintiff must demonstrate that if the injunction issues, the benefit to the plaintiff will outweigh the harm to the defendant and the public. *Storey v. Central Hide & Rendering Co.*, 148 Tex. 509, 226 S.W.2d 615, 618–19 (1950); *Executive Tele–Communication Systems v. Buchbaum*, 669 S.W.2d 400, 402 (Tex.App.—Dallas 1984, no writ). Fourth, the plaintiff must demonstrate "the likelihood of prevailing on the merits." *Mendoza v. Canizales*,

---

**1.** The 1991–92 fiscal year ran from October 1, 1991, to September 30, 1992.

**2.** The 1990–91 fiscal year ran from October 1, 1990, to September 30, 1991.

695 S.W.2d 266, 269 (Tex.App.—San Antonio 1985, no writ). Fifth, the plaintiff must show that without an injunction, he would suffer irreparable injury or have no adequate remedy at law. *Maxwell Realty, Inc. v. Magee,* 608 S.W.2d 283, 285 (Tex. Civ.App.—Houston [14th Dist.] 1980, no writ).

By two points of error, appellants contend that the first and fourth of the five requirements for a temporary injunction were not met. Appellants do not claim that the second, third and fifth requirements were not met. Therefore, the question of whether those three requirements were met is not before this Court. Tex.R.App.P. 74(d). I will address only the issues raised by appellants in their points of error. Tex. R.App.P. 90(a). In their first point of error, appellants argue that the issuance of the temporary injunction was improper because it altered the status quo. In their second point of error, appellants maintain that the trial court abused its discretion in

granting the temporary injunction because Sherrod and Kral failed to show a likelihood of prevailing on the merits. I would overrule point of error one. I would sustain point of error two as to Mr. Kral; but, I would overrule point of error two as to Mr. Sherrod.

### Effect of the Trial Court's Restoration of the 1990–91 Budget

■ I will initially address appellants' first point of error. Sherrod's lawsuit against appellants was precipitated by the Commissioners Court's enactment of the 1991–92 budget for Randall County as it affected the D.A.'s office. The following chart shows the budget for the D.A.'s office for the preceding fiscal year (1990–91), Sherrod's requested budget, County Judge C.W. McMenamy's proposed budget, the budget finally approved by the Commissioners Court, and the difference between the 1991–92 and 1990–91 budgets:

|  | BUDGET 1990–91 | SHERROD'S REQUESTED BUDGET 1991–92 | McMENAMY'S PROPOSED BUDGET 1991–92 | BUDGET 1991–92 | DIFFERENCE |
|---|---|---|---|---|---|
| D.A. SALARY SUPPLEMENT | $ 24,000 | $ 25,920 | $ 3,780 | $ 8,800 | $ −15,200 |
| ASSISTANT D.A. SALARIES | 208,000 | 273,280 | 209,591 | 220,000 | 12,000 |
| OTHER SALARIES | 257,195 | 327,939 | 172,249 | 229,149 | −28,046 |
| TAXES & BENEFITS | 123,138 | 140,452 | 107,795 | 119,300 | −3,838 |
| TRAVEL ALLOWANCE | 2,400 | 17,700 | 1,200 | 1,200 | −1,200 |
| OFFICE SUPPLIES | 15,000 | 20,000 | 15,000 | 17,500 | 2,500 |
| VEHICLE OPERATION | 2,000 | 3,500 | 2,000 | 2,000 | 0 |
| REPAIRS & MAINTENANCE | 1,000 | 3,000 | 1,000 | 1,000 | 0 |
| COURT REPORTER EXPENSE | 8,000 | 8,000 | 8,000 | 8,000 | 0 |
| LEGAL | 500 | 25,000 | 500 | 500 | 0 |
| TELEPHONE | 7,000 | 10,000 | 7,000 | 7,000 | 0 |
| CONTRACTED SERVICES | 9,000 | 14,000 | 9,000 | 9,000 | 0 |
| REIMBURSED TRAVEL | 1,000 | 1,000 | 1,000 | 1,000 | 0 |
| DUES & MEETINGS | 10,090 | 13,365 | 10,000 | 10,000 | −90 |
| MEDICAL REPORTS | 6,500 | 8,000 | 6,500 | 8,000 | 1,500 |
| WITNESS EXPENSE | 5,000 | 5,000 | 5,000 | 5,000 | 0 |
| EXPERT EXPENSE | 0 | 20,000 | 0 | 0 | 0 |
| DEPOSITION EXPENSE | 0 | 20,000 | 0 | 0 | 0 |
| CAPITAL EXPENDITURES | 0 | 38,892 | 0 | 0 | 0 |
| TOTAL | $679,823 | $975,048 | $559,615 | $647,449 | $ −32,374 |

As the foregoing chart shows, the three major changes in the budget from 1990–91 to 1991–92 occurred in the area of salaries.[3] Sherrod's salary supplement from Randall County was reduced by $15,200.[4] The fol-

---

**3.** A relatively minor decrease in the travel allowance of $1,200 as well as an insignificant decrease in the amount budgeted for dues and meetings of $90 were more than offset by a $2,500 increase in the amount budgeted for office supplies and a $1,500 increase in the medi-

cal reports budget. The decrease of $3,838 in the amount budgeted for taxes and benefits simply follows the decrease in the amount allotted for other salaries.

**4.** Sherrod's salary from the State of Texas for the 1991–92 fiscal year was $81,932. With a

lowing chart details the changes in the salaries paid to the assistant district attor- neys and the other employees of the D.A.'s office:

| | 1990–91 SALARY | 1991–92 SALARY | DIFFERENCE |
|---|---|---|---|
| ASSISTANT D.A. SALARIES | | | |
| ASSISTANT D.A. # 1 | $ 48,000 | | |
| ASSISTANT D.A. # 2 | 48,000 | | |
| ASSISTANT D.A. # 3 | 46,000 | | |
| ASSISTANT D.A. # 4 | 36,000 | | |
| ASSISTANT D.A. # 5 | 30,000 | | |
| TOTAL ASSISTANT D.A. SALARIES | $208,000 | $220,000 | $ 12,000 |
| OTHER SALARIES | | | |
| INVESTIGATOR # 1 | $ 30,220 | $ 31,144 | $ 924 |
| INVESTIGATOR # 2 | 29,720 | 30,406 | 686 |
| INVESTIGATOR # 3 | 26,000 | 0 | – 26,000 |
| ADMINISTRATIVE ASSISTANT | 21,320 | 21,833 | 513 |
| LEGAL SECRETARY # 1 | 18,000 | 18,524 | 524 |
| LEGAL SECRETARY # 2 | 17,690 | 18,093 | 403 |
| LEGAL SECRETARY # 3 | 17,690 | 18,093 | 403 |
| CHECK DEPT. ADMINISTRATOR | 17,690 | 18,093 | 403 |
| CHECK DEPT. SECRETARY # 1 | 14,770 | 15,006 | 236 |
| CHECK DEPT. SECRETARY # 2 | 14,770 | 15,006 | 236 |
| VICTIM–WITNESS COORDINATOR | 23,100 | 23,432 | 332 |
| RECEPTIONIST/LEGAL SECRETARY | 15,500 | 15,719 | 219 |
| PART TIME HELP | 10,725 | 3,800 | – 6,925 |
| TOTAL OTHER SALARIES | $257,195 | $229,149 | $– 28,046 |
| TOTAL SALARIES | $465,195 | $449,149 | $– 16,046 |

As shown by the chart above, the Commissioners Court budgeted an additional $12,000 for the salaries of the assistant district attorneys in 1991–92. Instead of setting a specific salary for specific assistant positions, the Commissioners Court allotted $220,000 for the assistants' salaries and directed Sherrod to divide that amount among his five assistants as he saw fit. The chart also evidences that the Commissioners Court eliminated one of three investigator positions.[5] The elimination of this position accounted for the lion's share of the $28,046 decrease in the funding of other salaries.[6] Every other employee received a raise in pay under the 1991–92 budget.

It is at once apparent that in seeking a temporary injunction to force the Commissioners Court to continue funding the D.A.'s office at the levels in place for the 1990–91 fiscal year, Sherrod sought two things: 1) the retention of his $24,000 annual salary supplement from the county (as opposed to a supplement of $8,800); and 2) the retention of a third investigator. By procuring the temporary injunction, Sherrod realized these two aims. However, the temporary injunction had the ironic effect of nullifying the raises the other employees of the D.A.'s office would have received under the 1991–92 budget.

Also clear is that the issuance of the temporary injunction preserved the status quo. The Texas Supreme Court originally defined "status quo" as "the last, actual, peaceable, noncontested status which preceded the pending controversy." *Transport Co. of Texas v. Robertson Transports, Inc.,* 152 Tex. 551, 558, 261 S.W.2d

$24,000 county supplement, Sherrod's total compensation would have been $105,932. With a supplement of $8,800, Sherrod's total compensation would have been $90,732.

5. Because of the elimination of this position, Sherrod had to take one of his existing investigators off of the county payroll. Sherrod chose to remove Mike Kral, the intervenor in this case, from the county payroll. Kral sought the reinstatement of the 1990–91 budget in order that the county might be forced to continue to fund the third investigator position.

6. The only other decrease in funding was a decrease of $6,925 for part time help.

549, 553–54 (1953) (quoting *Hartley v. Brady*, 114 S.W.2d 406, 408 (Tex.Civ.App.—Amarillo 1938, no writ)). Subsequent opinions by the Supreme Court and the Courts of Appeals have endorsed this definition. *See, e.g., State v. Southwestern Bell Tel. Co.*, 526 S.W.2d 526, 528 (Tex.1975); *Janus Films, Inc. v. City of Fort Worth*, 163 Tex. 616, 617, 358 S.W.2d 589, 589 (1962); *Surko Enters., Inc. v. Borg–Warner Acceptance Corp.*, 782 S.W.2d 223, 224 (Tex. App.—Houston [1st Dist.] 1989, no writ); *Swanson Broadcasting, Inc. v. Clear Channel Communications, Inc.*, 752 S.W.2d 165, 169 (Tex.App.—San Antonio 1988, writ dism'd w.o.j.).

In this case, the budget in effect prior to the pending controversy was the 1990–91 budget. Thus, by granting the temporary injunction and reinstating the 1990–91 budget, the trial court preserved the status quo. Appellants' argument that the 1991–92 budget was in effect when the temporary injunction issued and that the state of affairs at that time represented the status quo is unpersuasive. The last noncontested budget was the 1990–91 budget. By issuing a temporary injunction that caused the D.A.'s office to operate pursuant to the 1990–91 budgetary scheme, the trial court preserved the status quo. I would overrule appellants' first point of error.

### Standard of Review

■ In their second point of error, appellants argue that the trial court abused its discretion in granting the temporary injunction because Sherrod and Kral failed to show a likelihood of prevailing on the merits. The trial court found that Sherrod and Kral were likely to prevail upon trial of the case on the theory that the Commissioners Court abused its discretion by acting in an arbitrary and capricious manner when it formulated and enacted the 1991–92 budget for the D.A.'s office. This Court's task is to determine the propriety of the trial

court's finding. *See Vondy v. Commissioners Court of Uvalde County*, 714 S.W.2d 417, 420 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.) (*Vondy II*). As a starting point, I will detail the standard of review controlling the disposition of this appeal.

■ Article V, section 8 of the Texas Constitution gives the district court "appellate jurisdiction and general supervisory control over the County Commissioners Court." The district court is entitled to exercise its supervisory power in cases where a commissioners court clearly abuses its discretion. *Vondy II*, 714 S.W.2d at 420. If a commissioners court abuses its discretion, the district court has authority to abrogate the commissioners court's actions. *Id.* This Court's task is to determine whether the district court erred in finding that upon final trial it would probably be found that the Commissioners Court abused its discretion by acting arbitrarily and capriciously.[7] *Id.*

### The Meaning of "Arbitrary and Capricious"

The integral question in this case is whether the Commissioners Court acted arbitrarily and capriciously in its enactment of the 1991–92 budget for the D.A.'s office. If so, the trial court was correct in finding that Sherrod and Kral would likely prevail upon final hearing on the ground that the Commissioners Court abused its discretion. If not, the trial court was incorrect in so finding. Absolutely imperative to a correct resolution of this case is a proper understanding of when the acts of a commissioners court are arbitrary and capricious.

Appellants equate an arbitrary and capricious act with an act that is unreasonable. Appellants contend that the trial court may not consider the subjective intent or personal motives of the individual members of the Commissioners Court in determining

---

7. If the trial court erred, such error would constitute an abuse of discretion in and of itself. Thus, by determining whether the trial court erred in finding that the Commissioners Court probably abused its discretion, I am following the Supreme Court's direction that "[a]ppellate

review of an order granting or denying a temporary injunction is strictly limited to a determination of whether there has been a clear abuse of discretion by the trial court in granting or denying the interlocutory order." *Davis v. Huey,* 571 S.W.2d 859 (Tex.1978).

whether the acts of the Commissioners Court were arbitrary and capricious. Appellants succinctly summarize their position in their brief as follows:

> Appellee's [sic] extensive efforts during the temporary injunction hearing to show that members of the Commissioners Court individually harbored personal or political animosity toward Appellees, and that these subjective attitudes tainted the official actions of the Commissioners Court, are misdirected and should be disregarded. The question presented is whether, based on the objective facts, the Commissioners Court acted unreasonably.

In essence, appellants argue that as long as an act of a commissioners court is reasonable, that act cannot be arbitrary and capricious.

Sherrod and Kral's position is quite different. They contend that even if an act of a commissioners court is reasonable, the act is arbitrary and capricious if the commissioners court failed to consider relevant factors or considered irrelevant factors.

■ My review of the case law reveals appellants' position to be the more accurate position. Courts have generally equated an inquiry into the arbitrariness and capriciousness of a commissioners court's act with an inquiry into the reasonableness of that act. *See Vondy II*, 714 S.W.2d at 420 (appellant's argument that the trial court erroneously found the commissioners court's act to be reasonable "necessarily complain[ed] of the trial court's failure to find that the Commissioners Court acted arbitrarily and capriciously"). At issue in *Vondy II* was whether a commissioners court had provided a constable with a reasonable salary. The San Antonio Court of Appeals held that the "Commissioners Court acted arbitrarily and capriciously in failing to provide [the constable] with a reasonable salary." *Id.* at 425. When a commissioners court has a rational basis for an act, it has not acted arbitrarily and capriciously. *Weber v. City of Sachse*, 591 S.W.2d 563, 568 (Tex.Civ.App.—Dallas 1979, writ dism'd). The motives a county commissioner may have in taking a lawful action are "wholly immaterial." *Live Oak County v. Lower Nueces River Water Supply Dist.*, 446 S.W.2d 14, 26 (Tex.Civ. App.—Beaumont 1969, writ ref'd n.r.e.). Evidence relating to the "mentations" of a commissioners court "is legally ineffective as a matter of substantive law to impeach or abrogate an order of a Commissioners' [sic] Court." *Glimpse v. Bexar County*, 160 S.W.2d 996, 999 (Tex.Civ.App.—San Antonio 1942, writ ref'd). So long as an act of a commissioners court is reasonable, it cannot be arbitrary and capricious.

Having determined that a commissioners court acts arbitrarily and capriciously only if its acts are unreasonable, it is incumbent upon this Court to determine the reasonableness of the 1991–92 budget for the D.A.'s office as set by the Commissioners Court. I will analyze the reasonableness of eliminating the investigator position and the reasonableness of reducing Sherrod's salary supplement separately.

### Reasonableness of Eliminating an Investigator Position

■ A commissioners court is to exercise such powers and jurisdiction over all county business as is conferred by the Texas Constitution and the laws of Texas. Tex. Const. art. V, § 18(b). One of the statutory powers given to commissioners courts is the power of budget-making. Tex.Loc. Gov't.Code Ann. §§ 111.001–111.012 (Vernon 1988 and Supp.1992); *Commissioners Court of Caldwell County v. Criminal Dist. Attorney, Caldwell County*, 690 S.W.2d 932, 933 (Tex.App.—Austin 1985, writ ref'd n.r.e.). As succinctly stated by Judge Reavley,

> The commissioners court, consisting of the county judge and four county commissioners, is the governing and administrative body of a county in Texas. It has the power to determine the county budget and make appropriations of funds.

*Rheuark v. Shaw*, 628 F.2d 297, 301 n. 5 (5th Cir.1980); *see also Avery v. Midland County*, 390 U.S. 474, 476, 88 S.Ct. 1114, 1115, 20 L.Ed.2d 45, 49 (1968).

■ Although a commissioners court is part of the judicial branch of state gov-

ernment, Tex. Const. art. V, § 1; *Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104, 110 (Tex.1981) (*Vondy I*), its formulation of an annual budget is a legislative function. *Commissioners Court of Caldwell County v. Criminal Dist. Attorney, Caldwell County*, 690 S.W.2d at 933. The budget-making process "combines inextricably the two legislative powers of 'taxation' and 'appropriation.'" *Id.* In effect, a commissioners court acts as part of the legislative branch of state government when it makes a county budget. *Commissioners Court of Shelby County v. Ross*, 809 S.W.2d 754, 757 (Tex. App.—Tyler 1991, no writ).

■ A district court may enjoin a commissioners court from enacting a budget that fails to provide essential funding for a criminal district attorney's office. *See Bomer v. Ector County Commissioners Court*, 676 S.W.2d 662, 665 (Tex.App.—El Paso 1984, writ ref'd n.r.e.). Indeed, it could be said that a budget that fails to provide such essential funding is not a reasonable budget. Consequently, in order to ascertain the reasonableness of the Commissioners Court's act of eliminating an investigator position, it must be determined whether that investigator position was essential.

"A prosecuting attorney may employ the assistant prosecuting attorneys, *investigators*, secretaries, and other office personnel that in his judgment are required for the proper and efficient operation and administration of the office." Tex.Gov't.Code Ann. § 41.102 (Vernon 1988) (emphasis added). Additionally, "[a] prosecuting attorney shall fix the salaries of his assistant prosecuting attorneys, *investigators*, secretaries, and other office personnel, subject to the approval of the commissioners court of the county." Tex.Gov't.Code Ann. § 41.-106(a) (Vernon 1988) (emphasis added). Sherrod and Kral contend that the above-quoted statutes permit a commissioners court to review and reject personnel matters in a criminal district attorney's budget

only "to the extent that the specific cost of an enumerated item is excessive or unreasonable in its monetary demands upon county funds." An identical question was considered and rejected by the Austin Court of Appeals, which declared:

> From these statutory provisions we are asked to draw the inference that ... the Legislature intended to withdraw from the counties' budget-making process, and the attendant vicissitudes of political controversy, the amounts necessary to pay the salaries of the prosecuting attorney's employees, which amounts should instead be "fixed" by the prosecuting attorney, to be changed by the Commissioners Court only to the extent the amounts "fixed" by him are unreasonable or unnecessary. We cannot agree to that inference.

*Commissioners Court of Caldwell County v. Criminal Dist. Attorney, Caldwell County*, 690 S.W.2d at 935.[8]

■ The criminal district attorney does not dictate to the commissioners court what positions are essential for the operation of his office. While the criminal district attorney's opinion as to what positions are essential may very well be reasonable, a commissioners court may well hold a differing opinion that is equally reasonable. A commissioners court may make any changes to a criminal district attorney's proposed budget "that it considers warranted by the law and required by the interest of the taxpayers." Tex.Loc. Gov't.Code Ann. § 111.008(b) (Vernon 1988). "The correlation of total revenue and expenditure, and apportionment of the former among the various county functions, operations, and programs, in the overall public interest, is the essence of the decisionmaking entrusted to the judgment of the Commissioners Court. There could be no clearer grant of discretionary power." *Commissioners Court of Caldwell County v. Criminal Dist. Attorney, Caldwell County*, 690 S.W.2d at 934–35 (emphasis deleted). In making political decisions

---

**8.** I do not read *Commissioners Court of Harris County v. Fullerton*, 596 S.W.2d 572 (Tex.Civ. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.), a case dealing with a dispute between a commissioners court and a county auditor, as holding to the contrary.

concerning the scope and level at which various county programs shall be conducted, the commissioners court may consider "such matters as the relative importance to the county of the various functions, operations, and programs, in the circumstances to be expected in the budget year and in comparison of one against the others as competitors for available county revenues." *Id.*

The shortcoming in Sherrod and Kral's position is readily apparent for under their view, a prosecuting attorney's

> unilateral determination of his employees' salaries is not realistically subject to the public debate, the political-adjustment process, the public-interest evaluation, the taxpayer-interest consideration, and the mandatory correlation of county revenue and expenditure estimates which comprise the legislative process contemplated by [Tex.Loc.Gov't Code Ann. §§ 111.001–111.012 (Vernon 1988 and Supp.1992)]. Of what use are public hearings, public debate, and so forth if the amounts "fixed" by the prosecuting attorney are not open to change by the only body authorized to raise the revenue to pay them ...? If they are not open to change, there is no practical reason for them to be discussed or subjected to the political and legislative process. They are outside such process and the result of dictation by a single officer ...—an anomaly in any governmental budget-making process.

*Id.* at 938. Clearly, the third investigator position requested by Sherrod was not essential merely because he proposed it and the proposal was reasonable.

Alternatively, Sherrod and Kral argue that the third investigator position was essential under Tex.Gov't.Code Ann. § 46.006 (Vernon 1988), which states:

> (a) It is the purpose of this chapter [46] to increase the effectiveness of law enforcement in this state and to increase the funds available for use in prosecution.

> (b) The commissioners court in each county that has a prosecutor subject to this chapter shall provide the funds necessary to carry out the purpose of this chapter and shall continue to provide funds for the office of the prosecutor in an amount that is equal to or greater than the amount of funds provided for the office by the county on August 27, 1979. This subsection does not apply to local supplementation to the salary of the prosecutor.

Sherrod and Kral interpret this statute to prohibit the Commissioners Court from ever decreasing the funds available for use in prosecution from an existing level. I understand the statute differently. If a particular prosecutor's office was in existence on August 27, 1979, then the minimum amount of funding for that office must be equal to the amount of funds provided by the county for that office on August 27, 1979. Only if there was no prosecutor's office in existence on August 27, 1979, will it become necessary to determine an amount that will "increase the effectiveness of law enforcement" in order to arrive at the minimum amount of funding required. *See* Op.Tex.Att'y Gen. No. JM–628 (1987).

I turn now to an analysis of whether the Commissioners Court's decision that the third investigator position was not essential was a reasonable decision. The record shows that during the 1990–91 fiscal year, the D.A.'s office operated with five assistant district attorneys and three investigators. By way of comparison, during the same period of time, the 47th District Attorney's office [9] employed ten assistant district attorneys and two investigators. The Potter County Attorney's Office employed nine assistant county attorneys and one investigator. Judge McMenamy testified that as a rule of thumb, there should be one investigator for every five attorneys. Danny Hill, 47th District Attorney, testified that his office could use another investigator.

---

**9.** The 47th District Attorney's Office prosecutes felonies in Potter and Armstrong Counties. It also functions as County Attorney for Armstrong County.

Judge McMenamy also testified that in determining that three investigators were not needed in the D.A.'s office, he considered the fact that hundreds of other law enforcement officers were at work in Randall County and that these officers worked with the D.A.'s office.[10] Sherrod admitted on cross-examination that his investigators constituted a "drop in the bucket" of "the total law enforcement force available to enforce criminal laws in Randall County."

Moreover, evidence was produced that cast doubt upon Sherrod's claim that a third investigator was truly needed. For example, one of the D.A.'s investigators was used to videotape meetings of the Commissioners Court. Sherrod contended that the videotaping of the meetings was an effort to detect and discourage violations of the Texas Open Meetings Act by the Commissioners Court.

Judge McMenamy also found Sherrod's use of an investigator to be questionable in the investigation of Randall County Court at Law Judge Darrell Carey, a political adversary of Sherrod. One of Sherrod's concerns in investigating Judge Carey was that the Judge was taking an active role in supporting Sherrod's opponent for criminal district attorney in 1990.

Sherrod also claimed that Judge Carey was being investigated for permitting a local justice of the peace to view photographic evidence from a case tried by Judge Carey. The Commissioners Court may quite reasonably have thought that the D.A.'s office was improperly prioritizing law enforcement concerns. In fact, Judge McMenamy explicitly testified that he differed with the way that Sherrod utilized his investigators.

I find that based on the record, the Commissioners Court's determination that two investigators were sufficient for the D.A.'s office is eminently reasonable. My finding is supported by the case of *Weber v. City of Sachse,* 591 S.W.2d 563 (Tex.Civ.App.— Dallas 1979, writ dism'd). In *Weber,* a

district court permanently enjoined the Dallas County Sheriff's Department from reducing the number of sheriff's deputies patrolling within the incorporated boundaries of two Dallas County municipalities. The district court also ordered the Dallas County Commissioners Court to fund the patrols at existing levels. On appeal, the Commissioners Court contended that the trial court had erred in concluding they had acted unreasonably in reducing the funding of twenty deputies from the sheriff's budget. The Dallas Court of Appeals agreed with the Commissioners Court, declaring that the effect of the trial court's injunction was to supplant "the legislative judgment of the commissioners with the trial judge's own concept of what those budget priorities should be." The court went on to say:

> Although the district court may enjoin an illegal or unconstitutional act, it has no authority to direct a public official how to perform a discretionary act. The district court's order prohibiting the reduction of the number of patrols within [the two cities'] boundaries is tantamount to compelling the county commissioners to fund at least five sheriff's deputies to patrol each of the plaintiff municipalities, since that was the level of law enforcement existing on October 1, 1979. This the district court cannot do, *absent a mandatory statutory duty imposed on the Commissioners' Court,* because the district court, rather than the Commissioners' Court would be determining how county funds should be expended.... The allocation of county funds is a discretionary act of the public officials who were elected to make such decisions.

*Id.* at 566 (citations omitted) (emphasis added). Here, the Commissioners Court had no mandatory statutory duty to employ a third investigator in the D.A.'s office. The Commissioners Court reasonably exercised its discretion in declining to fund the position.

---

10. These officers include members of the Randall County Sheriff's Department, the Canyon Police Department, the West Texas State University Police Department and the Amarillo Police Department. Some state investigators also work in Randall County.

*Reasonableness of Reducing Sherrod's Salary Supplement*

I now turn to the question of whether the Commissioners Court's decision to reduce Sherrod's county salary supplement from $24,000 to $8,800 was reasonable. In ascertaining the reasonableness of the reduction, I must first determine whether the $24,000 salary supplement was "essential" funding for the D.A.'s office. *See Bomer v. Ector County Commissioners Court,* 676 S.W.2d at 665. There is no mandatory statutory duty requiring a county to pay a supplement to its prosecutor. The Professional Prosecutors Act states:

(a) Each prosecutor is entitled to receive from the state compensation equal to the compensation that is provided for a district judge in the General Appropriations Act.

(b) A commissioners court *may* supplement the prosecutor's state salary but may not pay the prosecutor an amount less than the compensation it pays its highest paid district judge.

Tex.Gov't.Code Ann. § 46.003 (Vernon 1988 and Supp.1992) (emphasis added). Subsection (b) has been interpreted by the Attorney General's Office to make a supplemental payment to a prosecutor wholly discretionary on the part of a commissioners court. Op.Tex.Att'y Gen. No. JM–319 (1985). Only if a commissioners court decides to pay a supplement does the minimum amount of the supplement—an amount not less than the supplement paid by the commissioners court to its highest paid district judge—come into play. Op. Tex.Att'y Gen. No. JM–319 (1985).

Clearly, if the Commissioners Court had never before paid a supplement to the criminal district attorney, it would not be an abuse of discretion to refuse to pay a supplement. Nor would it be unreasonable to pay a supplement of $8,800, as the Commissioners Court decided to do in this case, because such amount is not less than the supplement paid by the Commissioners Court to its highest paid district judge.[11] However, this is not a case in which the Commissioners Court had never before chosen to pay a supplement to the criminal district attorney. The chart below shows the supplemental amounts paid to Sherrod by Randall County since 1979:

| YEAR | SUPPLEMENT |
|------|-----------|
| 1979 | $ 5,160 |
| 1980 | 5,820 |
| 1981 | 6,286 |
| 1982 | 9,000 |
| 1982–83 | 9,816 |
| 1983–84 | 12,816 |
| 1984–85 | 13,200 |
| 1985–86 | 13,662 |
| 1986–87 | 13,662 |
| 1987–88 | 17,262 |
| 1988–89 | 24,000 |
| 1989–90 | 24,000 |
| 1990–91 | 24,000 |
| 1991–92 | 8,800 |

Sherrod argues that the Commissioners Court did not have the authority to reduce his county salary supplement below the level at which it was set when he ran for the office of criminal district attorney in 1990. Sherrod's basic contention is that because he relied on the salary supplement in making his decision to run for office in 1990, the Commissioners Court was powerless to reduce the amount of the supplement during the four-year term to which he was elected. As authority for his proposition, Sherrod cites several turn-of-the-century cases.[12] None of the cited cases support this proposition. The Commissioners Court simply had no mandatory duty under the constitution, statutes or case decisions of this state to pay a supplement to the criminal district attorney. In the absence of such a duty, it can hardly be contended that a $24,000 supplement is essential funding for the D.A.'s office. The Commissioners Court is not powerless to make a new determination of the proper salary supplement to be paid to the criminal district attorney each year during the annual bud-

---

11. The record shows that $8,800 is not less than the supplemental compensation Randall County pays its highest paid district judge.

12. *Brown v. Galveston Wharf Co.,* 92 Tex. 520, 50 S.W. 126 (1899); *Bastrop County v. Hearn,* 70 Tex. 563, 8 S.W. 302 (1888); *Presidio County v. Walker,* 29 Tex.Civ.App. 609, 69 S.W. 97 (1902).

get preparation process.[13]

I now address the issue of under what circumstances the D.A.'s salary supplement may be reduced. In *Op.Tex.Att'y Gen. No. JM-839 (1988)*, it was stated that a commissioners court was without authority to reduce the salary paid a county attorney below the amount set during the annual budget adoption process during the course of that particular budget year. The Attorney General went on to state that "[w]hether the commissioners court may eliminate the amount of compensation paid the county attorney by the county is a matter left to the discretion of the commissioners court to be determined at the regular annual budget hearings." *Id.* I agree with the language quoted above. A commissioners court may properly exercise its discretion to eliminate or reduce the amount of a supplement paid to a district attorney. But there must be a justifiable reason for the elimination or reduction.

Appellants have advanced several reasons which in their minds justify the reduction in Sherrod's supplement. First, appellants point to the fact that Sherrod received a raise of slightly over $25,000 in his state salary during fiscal year 1989–90. Appellants contend that the prior commissioners court wanted to reduce Sherrod's salary supplement in light of his raise from the state, but that Sherrod threatened to sue the commissioners if they reduced his supplement.[14] In appellants' view, the prior commissioners court was intimidated by Sherrod and therefore acquiesced to the payment of an exorbitant supplement. Appellants argue that the current Commissioners Court was therefore justified in reducing Sherrod's supplement.

Second, Sherrod received a $5,000 state raise subsequent to the time the prior commissioners court approved the 1990–91 budget. The Commissioners Court took that raise into consideration in deciding to reduce Sherrod's supplement.

Third, when deciding to reduce Sherrod's supplement, the Commissioners Court compared the supplement paid to Sherrod with the supplements paid by other counties across Texas. Sherrod's $24,000 supplement was shown to be the fourth largest supplement in the state. Many elected prosecutors in more populous districts received smaller supplements.[15] The Commissioners Court felt justified in paying Sherrod a supplement more in line with supplements that were being paid by other counties across the state.

Fourth, appellants note that in 1988, the Commissioners Court approved an increase of approximately $30,000 for salary raises in the D.A.'s office. Sherrod was given the power to distribute the $30,000 among his employees as he saw fit. Sherrod decided to give a $7,000 raise to himself. Appellants contend that this was in essence an unauthorized raise because the Commissioners Court never intended that Sherrod use any of the $30,000 to increase his own salary. Appellants argue that the prior commissioners court wished to reduce Sherrod's supplement for this reason at subsequent annual budget deliberations but they were dissuaded from doing so by Sherrod's threats of litigation and his erroneous legal advice. In taking no action, the Commissioners Court ratified the $7,000 raise.

None of the reasons advanced by appellants show there to have been a budgetary crisis necessitating the reduction. Had

---

**13.** Sherrod testified he was "not contending that the impact of the Commissioners' decision to reduce [his] salary supplement interferes with effective law enforcement in [Randall] County." Sherrod said that even with the reduction in his salary supplement he would continue to work as hard as before.

**14.** Sherrod admitted making the threat. It is also undisputed that the prior commissioners court had discussed the size of Sherrod's supplement.

**15.** For example, the record shows that the 47th District Attorney was paid a $20,748 supplement from Potter County and Armstrong County combined. Lubbock County paid its district attorney a $10,000 supplement. Dallas County paid its district attorney a supplement of $15,262. McLennan County, Bowie County, Bell County, Denton County and Galveston County all paid supplements to their respective district attorneys of between $10,000 and $13,000.

there been such a crisis and corresponding across-the-board salary cuts, a reduction in Sherrod's supplement would have been warranted. A substantial decrease in the D.A.'s workload would also have justified a supplement reduction. But appellants admit that the workload in the D.A.'s office has increased, not decreased. Reviewing the commissioners' testimony, I conclude that the Commissioners Court simply believed Sherrod was overpaid.

I am not persuaded that there was any justifiable reason for the Commissioners Court to reduce Sherrod's salary supplement. In my view, the trial court did not err in finding that upon final trial of the case Sherrod had a likelihood of prevailing on his claim that the Commissioners Court abused its discretion in reducing the amount of the supplement.

In summary, the Commissioners Court reasonably exercised its discretion in declining to fund the third investigator position. However, in my view, the Commissioners Court abused its discretion by reducing Sherrod's salary supplement.

DODSON, Justice, concurring and dissenting.

The appellants bring two points of error which read:

POINT OF ERROR ONE: The trial court had no power to grant the temporary injunction, since that action is an impermissible substitution by the trial court of its judgment for the legislative judgment of the Commissioners Court as to the appropriate 1992 county budget levels.

POINT OF ERROR TWO: The trial court abused its discretion when it granted the temporary injunction by finding that Appellees had shown a probable right to recover and by finding that the Commissioners Court abused its discretion, since as a matter of law, based on the evidence before the court, the Commissioners Court could not have abused its discretion.

By his opinion, Justice Poff, would overrule appellants' first point and the second point of error as to Mr. Sherrod's salary claim.

However, Justice Poff would sustain the second point of error as to the claim of Mr. Kral, (Intervenor, *i.e.*, the proposed investigator for the District Attorney's office).

■ I disagree with Justice Poff's disposition. I would sustain appellants' second point of error, reverse the trial court's action, dissolve the temporary injunction, and remand the action to the trial court.

On appeal from the trial court's order granting a temporary injunction, the only question is whether the trial court abused its discretion by granting the temporary injunction. In this instance, I conclude that the question must be answered in the affirmative.

The trial court abuses its discretion by granting a temporary injunction, when the applicant has failed to establish a probable right to requested relief on final hearing. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986); *Sun Oil Company v. Whitaker,* 424 S.W.2d 216, 218 (Tex.1968). In this instance, appellees, as a matter of law, have failed to establish a probable right to their requested relief on final hearing.

In the live trial pleadings, the District Attorney asked the trial court to permanently enjoin the Commissioners Court from ever reducing the budget for his office below the level established in the 1990–91 budget. Also, he asked the trial court to find that the Commissioners Court acted arbitrarily, capriciously and abused its discretion by: reducing his salary supplement from $24,000 to $8,800; reducing his car allowance from $2,400 to $1,200; failing to give certain employees a 2½ percent raise; reducing his investigators from three to two; failing to provide a $24,000 salary for the deleted investigator position; denying raises for attorney positions; denying an additional attorney position; denying funds for his legal expenses in lawsuits brought between himself and county officials; and denying funds for expert witnesses. He further requested the trial court issue a writ of mandamus directing the Commissioners Court to set aside its order enacting

the 1991–92 budget for his office and directing them to set a reasonable amount for each item of his requested budget.

In essence, the District Attorney wants a permanent injunction against the Commissioners Court prohibiting them from ever reducing the budget for his office at a level lower than the 1990–91 budget and in general a line item review of the budget for the Criminal District Attorney's office. This the trial court cannot do. *See Ector County, Texas, et al. v. Stringer*, 843 S.W.2d 477 (1992). The trial court (by injunction or otherwise) lacks jurisdiction to set the District Attorney's salary supplement, the salaries for employees at the District Attorney's office, or the budget for that office. *Id.* at 478–80. Furthermore, we have neither found nor have we been directed to an appellate court decision in the state that authorizes or permits a line item judicial review of the legislature's budget determination for any agency in the three separate branches of government.

Article V, section 18 of the Texas Constitution establishes the commissioners court as the principle governing body of the county. Under this authority, the commissioners court has the power to determine the county budget and appropriate funds. Tex. Const. art. V, § 18(b). The courts have no such power. *Ector County, Texas, et al. v. Stringer*, 843 S.W.2d at 478–80. Article V, section 8 of the Texas Constitution vests the district court with "appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law." Tex. Const. art. V, § 8.

The scope of the district court's jurisdiction has been defined by case law, as the court stated in *Tarrant County v. Shannon*, 129 Tex. 264, 104 S.W.2d 4, 9 (1937):

It is equally well settled that the supervisory power of the district court over the judgments of a commissioners' court, as authorized by article 5, section 8, of the Constitution, and article 1908 of the Revised Civil Statutes [the predecessor

of the Government Code], *can only be invoked when it acts beyond its jurisdiction or clearly abuses the discretion conferred on it by law.*

(emphasis added). *Accord Yoakum County v. Gaines County*, 139 Tex. 442, 163 S.W.2d 393 (1942). In the area of fiscal policy, the district court's role is necessarily a very limited one. *Ector County, Texas, et al. v. Stringer*, 843 S.W.2d at 478–79. As the *Stringer* court stated:

In short, *the district court may order the commissioners court to exercise its discretion, but cannot tell the commissioners what decision to make.* Once the commissioners court exercises its discretion, *the district court may review the order for abuse of discretion, but it cannot substitute its discretion for that of the commissioners court.*

*Id.* at 479 (emphasis added).

When the commissioners court establishes and sets the county budget, the court exercises its constitutionally granted legislative function. Tex. Const. art. V, § 18. When the district court exercises its constitutional authority to review the commissioners court's actions, for an abuse of discretion, the district court should follow the established principles for judicial review of legislative actions. In that regard, it is well settled that when the courts review legislative action "... [i]t is to be presumed that the Legislature has not acted *unreasonably* or *arbitrarily;* and a mere difference of opinion, *where reasonable minds could differ,* is not a sufficient basis for striking down legislation as arbitrary or unreasonable." *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex.1968). In other words, the courts should not interfere when the challenged action is a matter on which reasonable minds can differ or which presents issues or actions that are fairly debatable.

In this instance, all of the challenged budgetary items present fairly debatable issues and matters on which reasonable minds can differ.[1] Under those circum-

---

1. In this regard, the record illustrates that Mr. Sherrod's salary supplement was the fourth

largest supplement in this state. In fact, Mr. Sherrod's salary supplement exceeded that of

stances, the trial court is not at liberty to substitute its judgment for that of the Commissioners Court.

Appellees rely on *Vondy v. Commissioners Court of Uvalde Cty.*, 620 S.W.2d 104 (Tex.1981), to support their position. In *Vondy*, the commissioners court failed and refused to set a salary for a duly elected constable. *Id.* at 104–05. The constable sought mandamus relief in the district court to compel the commissioners court to set a reasonable salary for his office. *Id.* The district court denied relief. *Id.* The court of appeals dismissed the action on procedural grounds. *Id.*

In *Vondy*, the Supreme Court determined that under Article XVI, section 61 of the Texas Constitution, the commissioners court has a mandatory, nondiscretionary, and ministerial duty to compensate constables on a salary basis. *Id.* at 108–09.[2] The *Vondy* court further stated that the commissioners court abuses its discretion by not setting a reasonable salary for a duly elected precinct constable. *Id.* The court based its decision on two rationales: (1) the mandatory constitutional directive to the commissioners court; and (2) the inherent power of the judiciary to protect itself from legislative impairment or destruction. *Id.*

In this instance, the circumstances presented do not bring this action within the ambits of *Vondy*. First, there is no mandatory constitutional directive which requires the Commissioners Court to set a salary supplement for the Criminal District Attorney. Article·XVI, section 61 applies only to precinct officers. *See* Tex. Const. art. XVI, § 61.

Section 46.003(b) of the Texas Government Code is the only statutory authority for the Commissioners Court to supplement the Criminal District Attorney's state salary. This section provides that "[a] commissioners court *may* supplement the prosecu-

tor's state salary but may not pay the prosecutor an amount less than the compensation it pays its highest paid district judge." Tex.Gov't.Code Ann. § 46.003(b) (Vernon 1988). The only mandatory provision is the "may not pay ... less than ..." language, which requires the Commissioners Court to pay the Criminal District Attorney a salary supplement equal to the highest salary supplement paid to a district judge for the county. The statute prescribes no top limit. Nevertheless, any amount above the prescribed lower limit is purely discretionary with the Commissioners Court.

Second, I am not persuaded that the inherent power rationale from *Vondy* directs the district courts of this state to make, on request, a budgetary review of the commissioners court's county budget for reasonableness. In legal essence, the *Vondy* court told the commissioners court that it could not effectively destroy a constitutionally established elective office by failing or refusing to set a reasonable salary for the position.

The cases since *Vondy* agree that use of inherent power to review the county budget process should be cautiously and reluctantly invoked. In that regard, I found no appellate cases decided after *Vondy* that have required the district court to review the budget of a county-funded office or required the commissioners court to set a reasonable salary for any personnel paid from county funds. In general, the cases acknowledge the inherent power principle of *Vondy* and note that the doctrine is limited to the failure and refusal to provide *essential* (*i.e.* absolutely necessary) resources for the necessary and proper functioning of the particular county offices. *Bomer v. Ector County Com'rs Court*, 676 S.W.2d 662, 665 (Tex.App.—El Paso 1984, writ ref'd n.r.e.); *Dist. Judges of*

---

many elected prosecutors in more populous districts.

2. Article XVI, section 61 of the Texas Constitution provides in pertinent part:
 [i]n all counties in this State, the Commissioners Courts shall be authorized to determine whether precinct officers shall be compensat-

ed on a fee basis or on a salary basis, with the exception that it shall be mandatory upon the Commissioners Courts, to compensate all justices of the peace, constables, deputy constables and precinct law enforcement officers on a salary basis beginning January 1, 1973[.]
 Tex. Const. art. XVI, § 61.

*188th Jud. Dist. v. Cty. J.,* 657 S.W.2d 908, 910 (Tex.App.—Texarkana 1983, writ ref'd n.r.e.); *County Com'rs Court of Dallas Cty. v. Williams,* 638 S.W.2d 218, 225 (Tex. App.—Eastland 1982), *writ ref'd n.r.e. per curiam,* 655 S.W.2d 206 (Tex.1983) (where the supreme court limited the doctrine's application to essential functions, *i.e.* those which are absolutely necessary and indispensable).

On remand, in *Vondy v. Com'rs Court of Uvalde County,* 714 S.W.2d 417 (Tex. App.—San Antonio 1986, writ ref'd n.r.e.) (Vondy II—the continuing saga), the court determined that the salary of twenty (20) cents per hour for the constable was unreasonable and a further abuse of discretion by the commissioners court.

In this instance, even if we assume arguendo that the district court has the authority to review the Criminal District Attorney's salary supplement set by the Commissioners Court for the 1991–92 fiscal year for reasonableness then, as a matter of law, it cannot be said that $8,800 is unreasonable when the supplement is similar, equal to, and comparable to that of other district attorneys similarly situated. In other words, it cannot be said that a salary supplement greater than the $8,800 figure set for the Criminal District Attorney is an essential, absolutely necessary, and indispensable appropriation for the proper functioning of the office. Particularly where, as here, the supplement amount is fairly debatable, and a matter on which reasonable minds could differ.

In sum, I would sustain appellants' second point of error, reverse the action of the trial court, dissolve the temporary injunction, and remand the action to the trial court for proceedings consistent with this opinion. Determination of the first point of error is unnecessary to the disposition of this appeal.

BOYD, Justice, concurring and dissenting.

I concur with Justice Poff and the suggested disposition made by him of appellants' first point of error. I respectfully differ, however, with his suggested disposition of appellants' second point, and, for reasons hereinafter set out concur with Justice Dodson that appellants' second point should be sustained.

Initially, I agree with Justice Poff's suggested overruling of that portion of the second point challenging the decision of the commissioners court to eliminate the third investigator's position. For reasons which I will later discuss, I believe the applicable test is whether the commissioners court abused its discretion in that it acted arbitrarily, capriciously, and without regard to any guiding rules and principles. The record leading to the decision as to the necessity for a third investigator is set out in some detail in Justice Poff's discussion. That record does not show an abuse of discretion on the part of the commissioners court in making its decision.

In his discussion with regard to the reduction of the district attorney supplement, Justice Poff correctly notes that there is no mandatory statutory duty requiring a county to pay a supplement to its prosecutor, and the decision whether to make a supplemental payment to a prosecutor is wholly discretionary on the county's part. I also agree with his conclusion that the commissioners court is not powerless to make a new determination of the proper salary supplement to be paid to the criminal district attorney each year during the annual budget preparation.

I also agree with Justice Poff's conclusion that a commissioners court may properly exercise its discretion to eliminate or reduce the amount of a supplement paid to a district attorney. However, I do respectfully differ with his evident limitation of that discretion by placing emphasis on the fact that a supplement has been paid in the past. Implicitly, if not explicitly, the effect of that emphasis is to suggest that once the amount of a supplement has been set, a commissioners court's discretion is more limited than it was originally.

This suggested limitation is highlighted by Justice Poff's suggestion that if there had been a budgetary crisis and corresponding across-the-board salary cuts, the reduction would have been justified. That

suggestion ignores the fact that the district attorney's office is unique. Thus, I believe the commissioners court is entitled to consider the particular circumstances pertaining to that office in exercising its discretion in the granting, withholding, or reduction of a supplement each year it considers the county's upcoming budget. Indeed, the distinctiveness of a district attorney in fact was recognized by the legislature in its passage of the special statute dealing with the payment of salary supplements to district attorneys.

Justice Poff correctly recognizes in the matter of the formulation of its annual budget, a commissioners court acts as part of the legislative branch of state government. It is so well established as not to require the citation of relevant authority that the doctrine of separation of powers is alive and well in this state. The general rule is that a court may not invade the legislative field. *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99, 109 (1961). When the legislative branch acts upon a matter within its peculiar jurisdiction in a manner not prohibited by the Constitution, its actions are binding upon the courts. *Castillo v. Canales,* 141 Tex. 479, 174 S.W.2d 251, 252 (1943). In such a matter, the judiciary is under legal restraint from substituting its judgment for that of the legislative branch, and, so long as a decision of the legislative branch rests on the exercise of discretion, courts may not review or determine the wisdom of the legislative decision. *Wolf v. Young,* 277 S.W.2d 744, 747 (Tex.Civ. App.—San Antonio 1955, writ ref'd n.r.e.).

Indeed, in *Zoning Bd. of Adjustment v. Graham,* 664 S.W.2d 430 (Tex.App.— Amarillo 1983, no writ), this court cautioned that the judicial branch should always exercise caution in restraining the legislature or legislative branches in the performance of their governmental duties. *Id.* at 436. Moreover, it is established that in the exercise of its supervisory control, the district court may not substitute its discretion for that of the commissioners court and should only intervene to enjoin acts of that court that are either illegal, arbitrary or capricious. *Stovall v. Shivers,* 129 Tex. 256, 103 S.W.2d 363, 366 (Tex. Comm'n App.1937, opinion adopted); *Commissioner Court v. Ross,* 809 S.W.2d 754, 757 (Tex.App.—Tyler 1991, no writ); *Bomer v. Ector County Com'rs Court,* 676 S.W.2d 662, 665 (Tex.App.—El Paso 1984, writ ref'd n.r.e.).

In determining whether the commissioners court acted arbitrarily and capriciously and thereby abused its discretion in its actions challenged in this appeal, I believe the test for determining abuse of trial court discretion suggested in *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238 (Tex.1985), *cert. denied,* 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986) is analogous and applicable. As stated by the Supreme Court, that test is not whether, in the opinion of the reviewing court, the facts presented an appropriate case for the trial court's action. It is, rather, a question of whether the court acted without reference to any guiding rules and principles, *i.e.,* arbitrarily or unreasonably. *Id.* at 241–42. The Court also cautioned that the mere fact that a trial judge might decide a matter within his discretionary authority differently from an appellate judge in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*

The reasons advanced by appellants for their action have been stated in Justice Poff's opinion and do not need to be reiterated here. The fact that this court might have made a different decision on the matter does not demonstrate that those reasons were not sufficient to justify the action of the commissioners court. Suffice it to say, I do not agree that the record before us, by which we are bound, demonstrates the commissioners court acted without regard to guiding rules or principles, and thereby abused its discretion. Having made the determination that the commissioners court acted within its discretion, this court has no right to consider the wisdom of that discretionary action.

Accordingly, I join with Justice Poff in overruling appellants' first point, and join with Justice Dodson in sustaining appellants' second point. The action of the trial

court should be reversed, the temporary injunction dissolved, and the cause remanded to the trial court.