

## Office of the Attorney General
### State of Texas

DAN MORALES
ATTORNEY GENERAL

March 21, 1995

Honorable Sonya Letson
Potter County Attorney
303 Courthouse
Amarillo, Texas 79101

Opinion No. DM-337

Re: Whether section 157.002 of the Local Government Code authorizes a county to provide medical coverage for district officers and related questions (RQ-624)

Dear Ms. Letson:

You have asked whether, pursuant to section 157.002 of the Local Government Code, a commissioners court may provide medical coverage for certain district officers in Potter County. You specifically refer to the judges of the 47th, 107th, 181st, 251st, and 320th district courts, the 47th district attorney, and the Potter County agricultural and home extension agents (the "county extension agents"). You also ask whether a reduction in medical benefits violates the Americans with Disabilities Act, 42 U.S.C. ch. 126; whether the county would violate the Fourteenth Amendment to the United States Constitution if the county provided some district officers with medical insurance but not others; and whether an order of the county commissioners court is invalid because it provides a different benefit package to a current district elected officer as opposed to a successful challenger to that officer.

You aver that the state provides the primary salary and benefits for each of the district judges, the district attorney, and the county extension agents to which you refer, although the county has certain budgetary responsibilities toward each of them. Indeed, section 659.012(c) of the Government Code (formerly V.T.C.S. art. 6813b, § 3(b)) provides a district judge with an annual salary from the state. Section 32.188 of the Government Code requires Potter County to supplement the salary a district judge receives from the state by paying an annual salary of not less than $3500 nor more than $6000. In addition, while the state pays the district attorney's annual salary, *see* Gov't Code § 43.001, the county is authorized, but not required, to supplement the district attorney's salary, *see id.* §§ 46.001 (defining "prosecutor" to include district attorney), 46.002(1) (listing 47th district attorney as one to whom Government Code chapter 46 applies), 46.003(b) (authorizing commissioners court to supplement prosecutor's state salary); *Randall County Comm'rs Court v. Sherrod*, 854 S.W.2d 914, 924 (Tex. App.--Amarillo 1993, no writ). You state that a district judge and a district attorney receive medical insurance coverage from the state. *See* Ins. Code art. 3.50-2, § 3(a)(5)(A) (defining "employee"), *as amended by* Acts 1993, 73d Leg., ch. 791, § 43, at 3130,

3144-45; *id.* § 13(b) (providing automatic basic insurance coverage to every full-time employee). Finally, the Texas Agricultural Extension Service is an agency of Texas A&M University. Educ. Code § 88.001(3). You state that an employee of Texas A&M University also receives medical insurance from the state. *See* Ins. Code art. 3.50-3, §§ 3(a)(4)(A), 11 (defining "employee" and providing insurance coverage for eligible employee).

According to your letter, Potter County, by long-standing practice, has provided medical insurance for district judges, the district attorney, and county extension agents. Thus, these officers[1] receive medical insurance coverage from the county as well as from the state. You claim that the cost to the county "of providing this coverage to the district officers [about which you ask] is $39,000.00." To reduce spending, the county has proposed cutting medical coverage for these officers. The county commissioners court proposes to do so by phasing out medical coverage for district officers. You state that, under the proposal, the county will retain coverage for all current district officers, but when an incumbent district officer leaves office, the county will not provide medical coverage for the district officer's successor. Accordingly, the county will "retain the insurance for the current occupant of the office even through subsequent terms of office. If the office[r] ran for reelection, and won, he is provided the coverage. However, a challenger who won would not be covered." Your questions concern the propriety of this proposal to phase out medical coverage for district officers.

A county commissioners court is a court of limited jurisdiction; it may exercise only those powers that the state constitution and statutes confer upon it, either explicitly or implicitly. Attorney General Opinion V-1162 (1951) at 2 (and sources cited therein); *see Canales v. Laughlin,* 214 S.W.2d 451, 453 (Tex. 1948); *Renfro v. Shropshire,* 566 S.W.2d 688, 670 (Tex. Civ. App.--Eastland 1978, writ ref'd n.r.e.); Attorney General Opinions JM-887 (1988) at 2 (and sources cited therein); MW-473 (1982) at 1 (and sources cited therein). Consequently, while a commissioners court has broad discretion to exercise powers expressly conferred upon it, the constitution or statutes must provide the legal basis for any action that the commissioners court takes. *Canales,* 214 S.W.2d at 453. You believe that section 157.002 of the Local Government Code authorizes the county to provide medical coverage for the district judges, district attorney, and county extension agents who work in the county.

---

[1]For purposes of this opinion, we will assume that a district judge, district attorney, and county extension agent are "district officers" in the context of section 157.002(a)(2) of the Local Government Code.

Section 157.002(a) of the Local Government Code provides in pertinent part as follows:

> The commissioners court by rule may provide for medical care and hospitalization and may provide for compensation, accident, hospital, and disability insurance for the following persons *if their salaries are paid from the funds of the county . . . or if they are employees of another governmental entity for which the county is obligated to provide benefits:*
>
> . . . .
>
> (2) county and district officers and their deputies and assistants appointed under Subchapter A, Chapter 151. [Emphasis added.]

We know of no statute that requires the county to provide benefits for the officers about which you ask, who are employees of another governmental body--the state. You do not inform us whether the county is contractually obligated to provide benefits for any of the district officers to which you refer. We will assume, therefore, that the county is not so obligated. Accordingly, section 157.002(a) authorizes the county to provide medical benefits for the district judges, district attorney, and county extension agents only "if their salaries are paid from the funds of the county." We understand that the county does not pay the salaries of the county extension agents; hence, section 157.002(a) does not authorize the county to provide medical coverage for them.

Pursuant to section 32.188 of the Government Code, however, Potter County must pay a supplemental salary to the district judges of the 47th, 108th, 181st, 251st, and 320th districts. Additionally, pursuant to section 46.003, the county may pay a supplemental salary to the 47th district attorney. You do not inform us whether Potter County pays a supplemental salary to the district attorney. If the county does not supplement the 47th district attorney's state salary, we believe that section 157.002(a)(2) does not authorize the county to provide for the district attorney's medical care and hospitalization. If the county supplements the district attorney's state salary, then we analyze the application of section 157.002(a) of the Local Government Code to the district attorney in the same way that we analyze its application to the district judges. We will assume that Potter County pays a supplemental salary to the 47th district attorney. We must determine, therefore, whether section 157.002(a) authorizes a county to provide for the medical care and hospitalization of district judges and a district attorney.

On its face, section 157.002(a) authorizes a county to provide for the medical care and hospitalization of a district officer whose salary is "paid from the funds of the county."

With no legislative history indicating the contrary,[2] we believe that section 157.002(a) authorizes a county to provide medical coverage for a district officer who receives a salary from county funds, even a supplemental salary. Accordingly, Potter County may provide

---

[2]The legislature enacted the statutory predecessor to section 157.002 of the Local Government Code in 1941. *See* Acts 1941, 47th Leg., ch. 472. In part, the original enactment authorized the commissioners court in a county "of five hundred thousand (500,000) population or more . . . to formulate a general personnel system and rules and regulations . . . for medical care, hospitalization and accident insurance," *id.* caption, ·at 754, that would apply to "all deputies, assistants, and employees of the county, . . . and the deputies and assistants appointed by county and district officers . . . , where the salaries are paid from county [funds]," *id.* § 1. The statute further authorized the commissioners court of any county with the requisite population "to provide in [a] contract of employment that deputies, assistants, and other employees of the county, its departments or officers, . . . , whose compensation is payable from funds of any such county . . . may receive hospitalization and medical care and treatment in any county or city-county operated hospitals located in such county . . . [and to] provide for compensation, accident, hospital, or disability insurance" for these county employees. *Id.* § 2. This office commented that section 2 of the original act, V.T.C.S. art. 2372h, § 2, was the only statutory provision that empowered a commissioners court to self-insure county employees, instead of purchasing insurance through an insurance company. Attorney General Opinion MW-473 (1982) at 1; *accord* Attorney General Opinions JM-887 (1988) at 2 (citing Attorney General Opinion MW-473 (1982)); JM-406 (1985) at 2 (citing Attorney General Opinion MW-473 (1982)).

In 1987 the legislature nonsubstantively revised the predecessor statute and recodified it, in part, as section 157.002 of the Local Government Code. *See* Acts 1987, 70th Leg., ch. 149, § 1, at 939-40. After its revision and recodification, subsection (a) provided in pertinent part as follows:

> In a county with a population of 500,000 or more, the commissioners court by rule may provide for medical care and hospitalization and may provide for compensation, accident, hospital, and disability insurance for the following persons if their salaries are paid from the funds of the county . . . :
>
> (1) deputies, assistants, and other employees of the county, . . . , who work under the commissioners court or its appointees; and
>
> (2) deputies and assistants appointed under Subchapter A, Chapter 151, by county and district officers.

*Id.*

Just like the predecessor statute, section 157.002(a) did not apply to a district officer. In 1989, however, the legislature amended section 157.002(a)(2) to read as it does currently, authorizing the county to provide medical care, hospitalization, and hospital insurance for a district officer whose salary is paid from county funds or who is an employee of another governmental entity for which the county is obligated to provide benefits. *See* Acts 1989, 71st Leg., ch. 872, § 2, at, 3863. The phrase "county and district officers" was proposed to be added to subsection (2) on the floor of the house during the bill's second reading. *See* H.J. of Tex., 71st Leg., at 1832 (1989) (containing committee amendment no. 1 to C.S.S.B. 936). We found no legislative history indicating the reason for the amendment to subsection (2) of Local Government Code section 157.002(a) or indicating the kind of district officer that the legislature intended to include within the coverage of section 157.002(a)(2).

medical coverage for the 47th district attorney, as well as the 47th, 108th, 181st, 251st, and 320th district judges, to supplement the insurance they receive from the state.

Significantly, however, section 157.002(a)(2) merely authorizes—it does not require—a county to provide medical insurance to a district officer who receives a salary from the county. Thus, the decision to provide such insurance coverage to district officers is a matter wholly within the discretion of the county commissioners court. *Cf. Randall County Comm'rs Court*, 854 S.W.2d at 924 (stating that under Government Code section 46.003(b), which authorizes county to supplement salary of district attorney, decision to make such supplemental payment is wholly discretionary on part of commissioners court) (citing Attorney General Opinion JM-319 (1985)). In answer to your first question, therefore, Potter County is not required to provide medical coverage to district officers although the county provides such coverage to elected county officials and county employees.[3]

Under the proposal the Potter County Commissioners Court currently is considering, however, the county would not stop providing supplemental medical coverage to all district officers to whom the county pays a supplemental salary, but only to those who take office subsequent to the commissioners court's order. We find nothing in section 157.002 that would prohibit such a practice. *Cf. Carver v. Wheeler County*, 200 S.W. 537, 538 (Tex. Civ. App.—Amarillo 1918) (stating that commissioners court, which is statutorily authorized to fix county treasurer's salary, also is authorized to change county treasurer's compensation in its discretion). *But see Randall County Comm'rs Court*, 854 S.W.2d at 924-26 (Poff, J., concurring and dissenting) (applying reasonableness standard to evaluate commissioners court's decision to reduce county salary of criminal district attorney). You raise no other statutes that might limit the commissioners court's authority to terminate medical coverage in this way. *See* Gov't Code § 46.003(b).

---

[3]You state that you are unaware of any contract between Potter County and the district officers that obligates the county to provide the district officers medical coverage in addition to the medical insurance the district officers receive from the state. You also inform us that the Potter County Personnel Handbook states that the county "provides and pays for group health . . . for all full-time regular employees and elected officials," although the handbook cautions that "[t]he policies and conditions herein are subject to change by the county without notice." Whether the handbook constitutes an employment contract that applies to the district officers is an issue of fact, *see Federal Express Corp. v. Dutschmann*, 846 S.W.2d 282, 283 (Tex. 1993) (citations omitted); *Whitehead v. University of Tex.*, 854 S.W.2d 175, 181 (Tex. App.—San Antonio 1993, no writ) (citing *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 6 (Tex. App.—Corpus Christi 1991, no writ)); *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1, 6 (Tex. App.—Corpus Christi 1991, no writ) (citing *Berry v. Doctor's Health Facilities*, 715 S.W.2d 60, 61 (Tex. App.—Dallas 1986, no writ)), the resolution of which is not subject to the opinion process. *See, e.g.*, Attorney General Opinions DM-98 (1992) at 3; H-56 (1973) at 3; M-187 (1968) at 3; O-2911 (1940) at 2. Moreover, this office does not construe contracts. Attorney General Opinions DM-192 (1992) at 10; JM-697 (1987) at 6.

You suggest the commissioners court might be precluded from providing medical coverage to district officers "because it increases the [salary] supplement paid by the County over the statutory limit of salary supplements." Section 32.188(d), (f) of the Government Code states that Potter County may not pay a district judge a supplemental salary that exceeds $6,000 annually. "Salary" is what an employee receives as compensation for services the employee has performed. Attorney General Opinions JM-39 (1983) at 3; M-408 (1969) at 7; *see also* Attorney General Opinion M-325 (1968) at 4 (defining "salary" as fixed periodical compensation that employer pays to employee at regular intervals for services rendered in course of employment); BLACK'S LAW DICTIONARY 1200 (5th ed. 1979) (defining "salary"). In Attorney General Opinion M-408 this office considered whether, in the context of article III, section 24 of the Texas Constitution, the payment from the fisc of insurance premiums for a legislator is part of the legislator's salary. Attorney General Opinion M-408 at 6. The opinion concluded that "salary," as used in article III, section 24 of the constitution, "must be given its plain and ordinary literal meaning, that is salary compensation, and does not necessarily include every benefit or perquisite arising from the possession of office"; therefore, "salary" did not include the payment of insurance premiums. *Id.* at 7. We believe that, similarly, "salary" in the context of section 32.188(d) of the Government Code does not include the payment of insurance premiums.

You next ask whether the proposed plan to phase out medical coverage for district officers violates the equal protection clause of the Fourteenth Amendment to the United States Constitution. This office considered a similar question in Attorney General Opinion JM-401 (1985), which addressed language in a rider to the General Appropriations Act that excluded from the entitlement to sick leave faculty members at institutions of higher education with appointments of less than twelve months. Attorney General Opinion JM-401 at 1. The opinion considered whether the rider violated article I, section 3 of the Texas Constitution, which guarantees equal rights to all persons, and the Equal Protection Clause in the federal Constitution. *Id.* at 3-4. The opinion stated as follows:

> The Texas Constitution guarantees equality of rights to all persons but does not forbid reasonable classifications. A classification is reasonable if it is based on a real and substantial difference that relates to the subject of the enactment and operates equally on all within the class. . . . Classifications made by the legislature are largely within the discretion of the legislature and will not be stricken down by the courts where there is a real difference to justify the separate treatment undertaken by the legislature. . . .

> In reviewing legislation under the equal protection clause of the Fourteenth Amendment, the United States Supreme Court usually has used two primary standards. If a challenged law burdens an inherently "suspect" class of persons or impinges on a "fundamental"

> constitutional right, the law will be struck down unless the state demonstrates that the law is justified by a compelling need. If a suspect class or fundamental right is not involved, the law will be upheld unless the challenger can show that the classification bears no rational relationship to a legitimate state purpose or objective. . . . On a few occasions, the court also has utilized an intermediate test which asks whether the challenged law furthers a substantial interest of the state.

*Id.* at 3-4 (citations omitted). The opinion stated that the sick leave policy in question did not appear to affect either a suspect class or a fundamental constitutional right; additionally, the sick leave policy probably would not implicate the intermediate substantial state interests test. *Id.* at 4. It concluded that a court would apply the rational basis test to determine the constitutionality of the sick leave policy, inquiring whether the legislature has a legitimate purpose and whether the legislators' belief that the use of the challenged classification will promote that purpose is reasonable. *Id.*; *see also* Letter Opinion No. 93-48 (1993) at 2-3 (discussing Attorney General Opinion JM-401(1985)).

A newly hired or elected district officer is not, as such, a member of a protected class. Nor do you indicate that any other suspect class is involved. In addition, the provision of supplemental medical coverage is not a fundamental right. Thus, we believe that a court would apply the rational basis test to determine the constitutionality of Potter County's proposal to phase out medical coverage for district officers by providing such coverage only to district officers who hold that office as of a certain date. Whether the county commissioners court has a legitimate purpose for phasing out medical coverage for district officers as the county proposes to do, and whether the commissioners court's belief that distinguishing between incumbent officeholders and new officeholders will promote that purpose is reasonable are fact questions that we cannot resolve in the opinion process. *See, e.g.,* Attorney General Opinions DM-98 (1992) at 3; H-56 (1973) at 3; M-187 (1968) at 3; O-2911 (1940) at 2.

Your final question with regard to Potter County's plan to phase out medical coverage for district officers by providing medical coverage only for district officers who hold office as of a certain date is whether the order of the commissioners court adopting the phase-out plan is invalid because it results in a different benefit package being provided to a current district elected officer as opposed to a successful challenger to that officer. As we have stated above, section 157.002(a) does not prohibit the commissioners court from adopting the phase-out plan that you have described. You cite no other statutes that would preclude the adoption of such a plan. If the phase-out plan violates the equal protection clause, then the order would be invalid; however, we cannot resolve that issue in the opinion process.

You also ask about the possibility of terminating the medical coverage for all district officers as of a certain date. Specifically, you ask whether a reduction in medical benefits for existing district officers would violate the Americans with Disabilities Act (the "ADA"), 42 U.S.C. ch. 126. You state that some of the district officers have medical conditions that will make it difficult or impossible to replace the supplemental medical coverage. You suggest that the ADA might prohibit Potter County from terminating a disabled district officer's supplemental medical coverage.

In analyzing the problem you present under the ADA,[4] we assume for purposes of this opinion, as you do, that a district officer is an employee of the county. The ADA prohibits an employer[5] from discriminating against a qualified individual with a disability[6] because of that individual's disability in relation to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a); 29 C.F.R. § 1630.4. Thus, an employer may not discriminate on the basis of disability against a qualified individual in regard to compensation or fringe benefits for which the employee is eligible by virtue of the employment relationship. 29 C.F.R. § 1630.4(c), (f). A nondiscriminatory termination of fringe benefits, such as medical coverage, would not violate the ADA. Whether a particular termination of fringe benefits is nondiscriminatory is, however, a fact-based determination that is beyond the scope of the opinion process. *See, e.g.*, Attorney General Opinions DM-98 at 3; H-56 at 3; M-187 at 3; O-2911 at 2.

---

[4]We do not address in this opinion whether the county's proposal might be impermissible under any other federal law.

[5]The ADA defines "employer," with certain exceptions, *see* 42 U.S.C. § 12111(5)(B); 29 C.F.R. § 1630.2(e)(2), as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and any agent of such person, except that, for two years [after July 26, 1992,] an employer means a person engaged in an industry affecting commerce who has 25 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding year, and any agent of such person." 42 U.S.C. § 12111(5)(A); *see also* 29 C.F.R. § 1630.2(e)(1).

[6]A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); 29 C.F.R. § 1630.2(m); *see* 42 U.S.C. § 12111(9) (defining "reasonable accommodation"); 29 C.F.R. § 1630.2(g), (o) (defining "disability" and "reasonable accommodation").

# S U M M A R Y

Section 157.002(a)(2) of the Local Government Code does not prohibit a county from phasing out its provision of medical coverage to district officers by covering only those district officers who hold office as of a certain date. Unless a suspect class is involved, such a plan violates the equal protection clause of the Fourteenth Amendment to the United States Constitution only if the county commissioners court lacks a legitimate purpose for phasing out medical coverage for district officers in this way and if the commissioners court's belief that distinguishing between incumbent and new office-holders will promote that purpose is unreasonable.

Terminating medical coverage under section 157.002(a)(2) for all district officers on a certain date violates the Americans with Disabilities Act, 42 U.S.C. chapter 126, only if the termination discriminates on the basis of disability against a qualified individual.

Yours very truly,

DAN MORALES
Attorney General of Texas

JORGE VEGA
First Assistant Attorney General

SARAH J. SHIRLEY
Chair, Opinion Committee

Prepared by Kymberly K. Oltrogge
Assistant Attorney General