OFFICE OF THE ATTORNEY GENERAL · STATE OF TEXAS



May 4, 2000

The Honorable Tim Curry
Tarrant County Criminal District Attorney
401 West Belknap Street
Fort Worth, Texas 76196-0201

Opinion No. JC-0214

Re: Questions relating to a conflict between the sheriff and commissioners court of Tarrant County with regard to their respective authority over budgetary matters (RQ-0144-JC)

Dear Mr. Curry:

You have asked this office a series of questions relating to a conflict between the sheriff and commissioners court of Tarrant County with regard to their respective authority over budgetary matters. The controversies revolve around the budgeting of the Civil/Mental Warrants Division of the sheriff's office, the commissioners court's request that the sheriff relinquish certain vehicles, the sheriff's deployment of the personnel of his office, the applicability of the county vehicle policy to the sheriff's office, and the responsibility for setting minimum bid specifications for equipment or vehicles to be purchased by competitive bidding. We begin with a survey of the relevant statutory and constitutional provisions, as well as court decisions and opinions of this office which have touched upon this matter.

The commissioners of a county, and the sheriff of that county, are each constitutional officers. *See* TEX. CONST. art. V, § 18 (establishing commissioners court); *id.* art. V, § 23 (establishing office of sheriff). The sheriff's "duties, qualifications, perquisites, and fees of office [are] prescribed by the Legislature." *Id.*; *see also* Tex. Att'y Gen. LO-98-072, at 2 ("The sheriff is an independent constitutional officer, with independent rights and duties."). Pursuant to section 351.041 of the Local Government Code, the sheriff is "the keeper of the county jail" and is obliged "to exercise supervision and control over the jail." TEX. LOC. GOV'T CODE ANN. § 351.041 (Vernon 1999). Further, pursuant to article 2.17 of the Code of Criminal Procedure, the sheriff is "a conservator of the peace in his county." TEX. CODE CRIM. PROC. ANN. art. 2.17 (Vernon 1977). Texas sheriffs have "virtually unbridled authority in choosing their personnel, restricted only by certain basic constitutional considerations. On the other hand, the commissioners court or members of the court are expressly forbidden to attempt to influence the appointment of any person to an employee position authorized by the court. The commissioners court may limit the number of deputies authorized, but it has no power over naming the individuals to be appointed." *Commissioners Court of Shelby County v. Ross*, 809 S.W.2d 754, 756 (Tex. App.–Tyler 1991, no writ); *accord Garcia v. Reeves County, Tex.*, 32 F.3d 200, 203 (5th Cir. 1994); *Williams v. Bagley*, 875 S.W.2d 808, 811 (Tex. App.–Beaumont 1994, no writ).

However, the general legislative authority of the county is in the commissioners court. "The business of the county is generally conducted by and through the commissioners court, which can 'exercise such powers and jurisdiction over all county business' as prescribed by the Texas Constitution and by statute." Tex. Att'y Gen. LO-98-072, at 2 (quoting Texas Constitution article V, § 18). The commissioners court is "the county's principal governing body," and its "powers and duties . . . include aspects of legislative, executive, administrative, and judicial functions." *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77,79 (Tex. 1997). The principal power of the commissioners court with respect to other county officers like the sheriff is the power of the purse strings.

> One of the statutory powers given the Commissioners Court of Texas counties, exercisable in that court's constitutional power over county business, is the legislative power of budget-making.
>
> . . . .
>
> . . . . The process is *political*. It combines inextricably the two legislative powers of 'taxation' and 'appropriation,' the latter being a distribution and setting aside of parts of the total available revenue among the various government functions, operations, and programs.

*Commissioners Court of Caldwell County v. Criminal District Attorney, Caldwell County*, 690 S.W.2d 932, 933-34 (Tex. App.–Austin 1985, writ ref'd n.r.e.) (emphasis in original).

In carrying out the legislative function of budget-making the commissioners court has significant freedom of action. "The commissioners court performs a legislative function when it creates the budget for the county's offices and departments. This budgetary power carries with it broad discretion in making budgetary decisions." *Hooten v. Enriquez*, 863 S.W.2d 522, 528 (Tex. App.–El Paso 1993, no writ). That decision is not, however, boundless. "If the Commissioners Court does abuse its discretion, the district court has the power and authority to abrogate such actions." *Vondy v. Commissioners Court of Uvalde County*, 714 S.W.2d 417, 420 (Tex. App.–San Antonio 1986, writ ref'd n.r.e.) [hereinafter *"Vondy II"*]; *accord Bomer v. Ector County Commissioners Court*, 676 S.W.2d 662, 665 (Tex. App.–El Paso 1984, writ ref'd n.r.e.); *Randall County Comm'rs Court v. Sherrod*, 854 S.W.2d 914, 919 (Tex. App.–Amarillo 1993, no writ).

The district court does not have a right to second-guess the policy decisions of the commissioners. "The allocation of county funds is a discretionary act of the public officials who were elected to make such decisions. The district court's authority extends only to enjoin illegal expenditures and to situations where the commissioners abuse their discretion. It has no authority to substitute its judgment for that of these elected officials as to the particular expenditures that should be made." *Weber v. City of Sachse*, 591 S.W.2d 563, 566 (Tex. App.–Dallas 1979, writ dism'd); *accord Bomer*, 676 S.W.2d at 665; *Vondy II*, 714 S.W.2d at 420; *Sherrod*, 854 S.W.2d at

923. The standard for overturning an action of the commissioners court is "whether the court acted without reference to any guiding rules or principles. Another way of stating the test is whether the act was arbitrary or unreasonable." *Hooten*, 863 S.W.2d at 533.

The commissioners court, therefore, as a body selected by the people and vested with discretionary authority, has the power to determine the county budget and may thereby influence the actions of other county officials. However, those other county officials, as independent officers, are also vested with considerable discretionary authority with which the commissioners court may not interfere. "It is the law in Texas that an elected officer occupies a sphere of authority, which is delegated to him by the Constitution and laws, within which another officer may not interfere or usurp." *Renken v. Harris County*, 808 S.W.2d 222, 226 (Tex. App.–Houston [14th Dist.] 1991, no writ); *accord Abbott v. Pollock*, 946 S.W.2d 513, 517 (Tex. App.–Austin 1997, writ denied). A commissioners court, which sets the budgetary priorities of a county and can decide generally how much of the county's funds to dedicate to each of the county's purposes, has thereby a considerable ability to shape the ways in which an elected county official uses the resources of his office. But it cannot make those decisions for him. It may, in effect, tell that official what resources it will place at his disposal. But it may not micro-manage his decisions as to the use of those resources.

Perhaps the most succinct statement of the relations which ought to exist between a sheriff and the commissioners court was set down by the Fort Worth Court of Appeals sixty-five years ago, in another controversy involving the commissioners and sheriff of Tarrant County: "The sheriff is under as much obligation to conduct his office lawfully as is the commissioners' court its duties. Neither is Tarrant County, but each has a bounden duty to the administration of the county affairs." *Tarrant County v. Smith*, 81 S.W.2d 537, 538 (Tex. Civ. App.–Fort Worth 1935, writ ref'd).

Having summarized the relevant legal principles, we turn to your specific questions. You ask first: "While it is a truism of county government that the commissioners court should reasonably fund mandatory duties imposed on the Sheriff and other county officials, what are the guidelines regarding the depths of the cuts that the Commissioners Court may impose?" Letter from Honorable Tim Curry, Criminal District Attorney, Tarrant County, to Honorable John Cornyn, Texas Attorney General, at 2-3 (Nov. 3, 1999) (on file with Opinion Committee) [hereinafter "Request Letter"]. As we understand the controversy giving rise to this particular question, the commissioners court has cut the budgets of a division of the sheriff's department called the Civil/Mental Warrants Division, which as its name implies is charged with carrying out the sheriff's statutory duty to serve civil process. *See* TEX. LOC. GOV'T CODE ANN. § 85.021 (Vernon 1999) (sheriff has duty to "execute all process and precepts directed to [him] by legal authority."). In the sheriff's view, as you tell us, "these actions have severely compromised his ability to discharge" this duty. Request Letter at 1. You seek to know then, in effect, to what extent the commissioners court may order cuts in the budget of this division.

Generally, reductions in budgets of this sort are within the discretion of the court. As we have pointed out, it is well-settled that the commissioners court has broad authority in the essentially legislative act of setting the fiscal priorities of the county. *See Commissioners Court of Caldwell*

*County*, 690 S.W.2d at 934; *Hooten*, 863 S.W.2d at 528. However, there are limits to this authority. The limits are described by the San Antonio Court of Appeals in *Vondy II*: "The Commissioners Court cannot attempt to restrict or abolish a constitutionally established office by refusing to reasonably compensate the holder of such office. *The Commissioners Court also cannot attempt to abolish or restrict the office of constable by refusing to allow or by preventing the elected official from performing those duties required of him.*" *Vondy II*, 714 S.W.2d at 422 (emphasis added).

H. T. Vondy, the plaintiff in the above-entitled action, had been elected constable of Precinct 6 in Uvalde County in 1978. The commissioners refused to set a salary for his office. The Supreme Court of Texas, in *Vondy v. Commissioners Court of Uvalde County*, 620 S.W.2d 104 (Tex. 1981) [hereinafter "*Vondy I*"] held that, pursuant to article XVI, section 61 of the Texas Constitution, the commissioners were required to set a reasonable salary for his office. *See Vondy I*, 620 S.W.2d at 108-9. In response, the commissioners court set a salary of $40 per month. The court of appeals took the view that this salary was unreasonable in light of the statutory duties imposed upon the constable. *See Vondy II*, 714 S.W.2d at 421.

The commissioners court argued that it need not use constables to serve process, since sheriffs could do so. (We note that this argument is the inverse of that of your commissioners who have "encouraged the district and county clerk to forward civil process to the constables." Request Letter at 1.) In the court of appeals' view, however, this argument was unavailing: "[T]he delegation of such duties does not eliminate the obligation of a constable to perform such duties where required by law to do so or if called upon to do so; nor does it relieve the Commissioners Court from compensating a constable for other services rendered or which he is obligated to perform." *Vondy II*, 714 S.W.2d at 422.

It might be suggested that *Vondy II* has in effect been overturned by the decision of the Supreme Court of Texas in *Commissioners Court of Titus County v. Agan*, 940 S.W.2d 77 (Tex. 1997). In that case, the court held that, because payroll preparation was not a "core function" of the county treasurer, the commissioners could transfer such responsibility to the county auditor. "The Commissioners Court cannot allocate the County Treasurer's core functions to any other officer, including the County Auditor. If the Legislature does not specifically assign a duty to the County Treasurer, that duty is not one of the County Treasurer's core functions. The Commissioners Court may, within its discretion, assign those non-core functions to other county officials the Legislature authorizes to perform those functions." *Agan*, 940 S.W.2d at 82. It might therefore be argued, in this case, that since both sheriffs and constables have some statutory duty to serve process, *see* TEX. LOC. GOV'T CODE ANN. §§ 85.021 (duty of sheriff), 86.021 (duty of constable) (Vernon 1999), service of process is not a "core function" of either office, and that *Agan* has accordingly overturned *Vondy II sub silentio*. While the argument that such service is not a core function may be correct, it does not necessarily follow that *Agan* applies either in the *Vondy* situation or in the instant case. In *Agan*, the commissioners could choose whether the duty of preparing the payroll be in the hands of the treasurer or the auditor. Here, however, and in *Vondy II*, the choice of officer to whom process is directed to be delivered is not made by the commissioners court, but by the district and county courts. Accordingly, it is still the case that either constable or sheriff may be legally mandated to

execute such process, and the logic of *Vondy II* – that the commissioners may not impede another constitutional officer in the discharge of his duty – remains compelling.

After *Vondy II*, then, the rule in this matter may most succinctly be stated as follows: the commissioners court, in exercise of its budgetary powers, may take a different view of the importance of certain functions than an elected officer does, and may therefore budget that officer less to perform that function than he may request. What, under *Vondy II*, it cannot do is "prevent[] the elected official from performing those duties required of him." *Vondy II*, 714 S.W.2d at 422. Whether any particular budget cut is so severe as to meet this standard is a question of fact, upon which we cannot opine. A district court, were it to consider this matter, could not simply substitute its judgment as to what constitutes better public policy for that of the duly elected commissioners. *See id.* at 420; *Bomer*, 676 S.W.2d at 665; *Sherrod*, 854 S.W.2d at 923.

Your second question is whether the commissioners court can "lawfully require a Sheriff to relinquish control of any of the Sheriff's office vehicles and associated equipment." Request Letter at 2, 4. As you explain it, the controversy in this instance derives from the commissioners court's desire to reallocate "ten vehicles and associated equipment." *Id.* at 4. Further, the commissioners requested of the sheriff that he turn in one of two vehicles he had assigned to himself. As we understand it, the sheriff has done so. However, as to the other vehicles, you write that he wishes "to keep this equipment so that he may reassign other personnel to use the vehicles and the equipment in continuing to perform civil process service or to perform other official duties of the Sheriff." *Id.*

We do not disagree with your premise that these vehicles, "acquired pursuant to Chapter 262 of the Texas Local Government Code [are not] the property of the office holder." *Id.* Certainly the cars are not the sheriff's personal property. Were he in fact to treat them as his personal property, your office might have a case against him under section 39.02 of the Penal Code, pursuant to which it is unlawful for a public servant "with intent to obtain a benefit or with intent to harm or defraud another [to] intentionally or knowingly misuse[]" public property. TEX. PEN. CODE ANN. § 39.02(a)(2) (Vernon 1994). Moreover, should the commissioners court disagree with the sheriff about the number of cars his office needs, it is – as we shall discuss at greater length further – within its authority to reduce his vehicle budget when it next considers the budget.

However, if the question is whether the commissioners court may substitute its judgment for that of another constitutional officer in determining how to deploy the resources placed at his disposal, such a substitution would in our view amount to an invasion of that "sphere of authority, which is delegated to him by the Constitution and laws within which another officer may not interfere or usurp." *Renken v. Harris County*, 808 S.W.2d at 226; *accord Abbott v. Pollock*, 946 S.W.2d at 517. This office has previously opined that a commissioners court may not forbid the sheriff, as keeper of the jail, to serve Folger's coffee and Mrs. Baird's bread to the inmates. *See* Tex. Att'y Gen. LO-96-017. For the same reason, we do not think that it may micro-manage his deployment of the fleet of cars placed at his disposal.

Nor are we persuaded by your argument that section 262.011(j) of the Local Government Code gives the county purchasing agent, with the approval of the commissioners court, "the power to determine the appropriate user of county personal property." Request Letter at 5. Section 262.011(j) reads:

> To prevent unnecessary purchases, the county purchasing agent, with the approval of the commissioners court, shall transfer county supplies, materials, and equipment from a subdivision, department, officer, or employee of the county *that are not needed or used* to another subdivision, department, officer, or employee requiring the supplies or materials or the use of the equipment. The county purchasing agent shall furnish to the county auditor a list of transferred supplies, materials and equipment.

TEX. LOC. GOV'T CODE ANN. § 262.011(j) (Vernon Supp. 2000) (emphasis added).

We read this provision as authorizing a method by which the purchasing agent may transfer unused county property to another part of county government so that new purchases need not be made when, in effect, the very same items are sitting in storage. Your argument, on the other hand, would appear to be that the statutory reference to supplies "that are not needed or used" gives the purchasing agent an effective veto power over the decision of other county officers as to whether and how they use such supplies and equipment as have previously been allocated to them in the budget process. You cite no authority for this proposition, and our research has revealed none.

You next ask whether, the commissioners court having set the number of positions in the sheriff's office for a given budget year, the sheriff is authorized to decide to deploy such personnel. *See* Request Letter at 2, 5. It follows from our prior discussion that the sheriff has such discretion and that the commissioners court has no general power to countermand his decisions in this regard, short of applying to the district court for a writ of mandamus if the sheriff abuses that discretion. This office has recently concluded that "it is for the sheriff, in the exercise of reasonable discretion, to determine how to allocate the law enforcement services of his office to different parts of the county." Tex. Att'y Gen. Op. No. JC-0125 (1999) at 3-4. Such discretion is of course bounded by statutes, as you note, "relating to pay and overtime and other general laws relating to public employees." Request Letter at 8. Thus the actions of the sheriff are subject to review for abuse of discretion, but "not merely because of a dispute between public officials regarding the reasonableness of the actions." *Id.*

Your next series of questions concerns the commissioners court's refusal to order certain replacement vehicles allocated to the sheriff's office until the sheriff complied with a county vehicle policy requiring him to turn in vehicles no longer allocated to this office. You ask, in effect, whether the commissioners may require the sheriff to comply with the rule that he must turn in an old vehicle for each new vehicle he receives, and whether, should he refuse to do so, the commissioners may

refuse to purchase such replacement vehicles. *See id.* at 2, 9. In this instance, we think the commissioners may do so.

As you describe the county vehicle policy, it "requires the Sheriff (as it requires all department heads) to relinquish possession of a currently in-use vehicle on the same day that his office takes possession of its replacement, the result being that the department will never be in possession of more vehicles than are authorized by the currently effective county budget and the current vehicle allocations." Request Letter at 10. As we have previously noted, in the legislative act of budget-making the commissioners court has significant freedom of action. *See Hooten*, 863 S.W.2d at 528. If the commissioners could not require the surrender of vehicles when their replacements were received, a department would at the end of the process have more cars than the court had allocated, thus rendering the budgetary power of the commissioners court illusory.

Moreover, the general power to make contracts binding upon the county belongs to the commissioners court. *See* Tex. Att'y Gen. Op. No. DM-111 (1992) at 2. The power to purchase the cars is, like the rest of the court's powers in the initial allocation of county resources, discretionary. Part of that discretion, we think, is a power to decide that a particular purchase may not be necessary. As you point out, pursuant to section 111.093(d) of the Local Government Code, a "requisition, contract, or allocation [may be] canceled in writing by the commissioners court or a county officer for a valid reason." *See* TEX. LOC. GOV'T CODE ANN. § 111.093(d) (Vernon 1999). We think it likely that a court would find it "a valid reason" to cancel such a requisition that a particular county officer already had the equipment he had been allocated.

You ask finally whether the sheriff or another elected official may set minimum bid specifications for equipment or vehicles to be purchased by competitive bidding. *See* Request Letter at 2, 11. He may not. As you point out, section 262.023 of the Local Government Code vests the duties of complying with the competitive bidding statute in the commissioners court. *See* TEX. LOC. GOV'T. CODE ANN. § 262.023 (Vernon Supp. 2000). This is consistent with the general budgeting and contracting authority of the court. Certainly in deciding what vehicles and equipment to purchase, whether by competitive bidding or by any other method, the commissioners court may wish to consult with the officer who will finally use such equipment. He may doubtless advise the commissioners as to what, in his judgment, will best allow him to fulfill his duties. But the commissioners court is not obliged to agree with that officer's views in this regard. It is for the court, in the reasonable exercise of its discretion, to decide what the county will purchase.

# S U M M A R Y

The commissioners court of a county, in the exercise of its authority to set a county budget, may take a different view of the importance of certain functions than does an elected officer and may budget that officer less money to perform that function than he requests. It may not prevent him thereby from performing his statutorily mandated duties. However, in determining whether the commissioners court has abused its discretion in this regard, the district court may not substitute its view of sound public policy for that of the commissioners.

While vehicles allotted by the commissioners court to an elected county officer are county property rather than the property of the officer, once such resources have been allocated to an elected officer the commissioners may not substitute their judgment as to the deployment of those resources for the officer's.

The commissioners court having set the number of positions in a county office for the budget year, discretion as to how to deploy such manpower belongs to the officer.

A county vehicle policy requiring a county officer to relinquish control of vehicles in use when he takes possession of their replacements is a budgetary safeguard within the discretion of the commissioners court. Accordingly, should the officer refuse to comply with the policy, the court may refuse to provide the replacement vehicles.

The power to set minimum bid specifications for equipment or vehicles to be purchased by competitive bidding resides in the commissioners court. The court may wish to consult with the officer who will ultimately use such equipment, but is not obliged to agree with the officer's views in this regard.

Yours very truly,

JOHN CORNYN
Attorney General of Texas

ANDY TAYLOR
First Assistant Attorney General

CLARK KENT ERVIN
Deputy Attorney General - General Counsel

ELIZABETH ROBINSON
Chair, Opinion Committee

James E. Tourtelott
Assistant Attorney General - Opinion Committee